72 N.Y.2d 288 (1988)
In the Matter of State Farm Mutual Automobile Insurance Company, Respondent,
v.
Anthony Amato et al., Respondents, and City of New York et al., Appellants. (Proceeding No. 1.)
In the Matter of State Farm Mutual Automobile Insurance Company, Respondent,
v.
John Rutherford et al., Appellants, and Aetna Casualty and Surety Company et al., Respondents. (Proceeding No. 2.)
Court of Appeals of the State of New York.
Argued June 1, 1988.
Decided July 12, 1988.
Peter L. Zimroth, Corporation Counsel (William Thom, Lori Finsterwald and Stephen J. McGrath of counsel), for City of New York and another, appellants.
Sally Weinraub and Bert W. Subin for John Rutherford and another, appellants.
Bertram Herman for State Farm Mutual Automobile Insurance Company, respondent.
Michael Majewski and Glen H. Shore for Aetna Casualty & Surety Company, respondent.
Judges SIMONS, KAYE, TITONE and BELLACOSA concur with Judge ALEXANDER; Chief Judge WACHTLER dissents and votes to affirm in a separate opinion in which Judge HANCOCK, JR., concurs.
*290 ALEXANDER, J.
The issue presented on this appeal is whether the City of New York (City), as an unregulated self-insurer, is statutorily required to provide uninsured motorist coverage to two of its police officers who were injured when their police vehicles were struck by uninsured motor vehicles. We hold that there is no such statutory obligation.

I.

Proceeding No. 1
On April 26, 1982, New York City Police Officer, Anthony Amato, was injured when his police scooter was struck by a taxi cab. Amato was advised by the insurer of the offending vehicle, Wausau Insurance Co., that the taxi had been stolen at the time of the accident, and that Wausau therefore would not provide insurance coverage. The City also denied Amato coverage, explaining that it was not statutorily required to *291 provide such protection, and suggesting that Amato pursue his claim with the Motor Vehicle Accident Indemnification Corporation (MVAIC). MVAIC, however, rejected Amato's claim as well, presumably because Amato already had uninsured motorist coverage pursuant to an automobile insurance policy issued by petitioner, State Farm Mutual Automobile Insurance Co. (State Farm), covering his personal automobile. Amato then filed an uninsured motorist claim with State Farm pursuant to the uninsured motorist indorsement contained in his policy. After that claim also was denied, Amato demanded arbitration of his claim from State Farm pursuant to the arbitration clause in his policy.
State Farm instituted a CPLR article 75 proceeding to stay arbitration, contending in its petition that the City had the primary obligation to "afford uninsured motorist coverage on its vehicles". Special Term temporarily stayed arbitration pending a hearing and granted State Farm's request to join the City, Wausau, the police department, and the owner of the taxi as additional respondents. After a hearing, Special Term determined that State Farm, rather than the City, was required to provide uninsured motorist coverage, denied the petition to permanently stay arbitration, and directed State Farm to arbitrate the matter with Amato.

Proceeding No. 2
On February 5, 1984, New York City Police Officer, John Rutherford, was injured when a car struck his police vehicle in the rear while it was stopped at a traffic light. Although the car's registration indicated Aetna Casualty & Surety Co. as insurer, Aetna denied Rutherford's claim, as well as his wife's derivative claim, contending that a search of its files had not revealed any policy covering the offending vehicle. Rutherford filed a claim with MVAIC, but that claim was denied because Rutherford already had uninsured motorist protection under an insurance policy issued by State Farm covering his personal automobile. Rutherford filed a claim with State Farm pursuant to the uninsured motorist indorsement contained in his policy, but State Farm rejected the claim, contending that the City was the primary insurer of its police vehicle and thus was primarily liable for the payment of uninsured motorist benefits. Rutherford then demanded that State Farm arbitrate his uninsured motorist claim pursuant to the arbitration clause in his policy.
*292 As it had done in respect to Amato's claim, State Farm instituted a proceeding to stay arbitration, again contending that the City, as "owner of the host vehicle", had the primary obligation to provide uninsured motorist coverage to Rutherford. Special Term again temporarily stayed arbitration pending a hearing, granted State Farm's request to join the City, the police department, Aetna, and the owner of the offending vehicle as parties and, after a hearing, held that State Farm, rather than the City, had the primary obligation to provide uninsured motorist coverage. The court denied State Farm's petition, and directed it to proceed to arbitration with Rutherford.
On State Farm's appeal from both adverse judgments, the Appellate Division, in a single order, reversed the judgments in each proceeding and granted State Farm's petitions to stay arbitration. Citing our decision in Matter of Country-Wide Ins. Co. (Manning) (62 N.Y.2d 748, affg for reasons stated 96 AD2d 471), the court held that the City had the primary obligation to provide uninsured motorist coverage to Amato and Rutherford. Both proceedings are before this court pursuant to leave granted by the Appellate Division on the following certified question: "Was the order of this court dated June 29, 1987, properly made?" For the reasons that follow, we now reverse.

II.
We have previously noted that the "Legislature has specifically declared its grave concern that motorists who use the public highways be financially responsible to ensure that innocent victims of motor vehicle accidents be recompensed for their injuries and losses" (Matter of Allstate Ins. Co. v Shaw, 52 N.Y.2d 818, 819). Articles 6 and 7 of the Vehicle and Traffic Law require motorists to provide proof of financial security as a condition of motor vehicle registration and also authorize the Commissioner of Motor Vehicles to suspend or revoke the license or registration of any person for whom such proof is not forthcoming (Vehicle and Traffic Law § 310 et seq.; § 330 et seq.). Moreover, by virtue of Insurance Law § 3420 (f), "where an accident is caused by an unidentified vehicle or where the insurer has disclaimed coverage, a victim will still be able to recover for losses sustained" (Matter of Allstate Ins. Co. v Shaw, 52 NY2d, at 819, supra [discussing Insurance Law former § 167 (2-a)]). That statute requires that uninsured motorist protection be provided in all policies insuring against *293 liability "for bodily injury or death * * * arising out of the ownership, maintenance and use of a motor vehicle by the insured" (Insurance Law § 3420 [f] [emphasis added]).[1] Here, Amato and Rutherford each hold an insurance policy issued by State Farm providing uninsured motorist coverage. The City contends that State Farm is obligated to provide both police officers with uninsured motorist benefits pursuant to these policies, and that the City has no such obligation because police vehicles are specifically exempted from the requirements of Insurance Law § 3420 (f).
In granting petitioner's requests to stay the arbitration proceedings, the Appellate Division relied on our holding in Country-Wide. There, an employee of the New York City Department of Transportation (DOT) had been involved in an accident with an uninsured automobile while the employee was driving a DOT vehicle. The employee filed a claim with Country-Wide, her personal insurer, but Country-Wide refused to pay her claim and the employee demanded arbitration. In the circumstances of that case, the Appellate Division held that "any arbitration agreement contained in Country-Wide's insurance policy issued to [the employee] is subordinate to DOT's primary self-insurance covering [the employee]" (Matter of Country-Wide Ins. Co. [Manning], 96 AD2d, at 472, supra). The court noted that "[i]nsurance against injury caused by an uninsured motorist is required in this State as a matter of public policy" and that "[w]hereas DOT may be authorized to be a self-insurer instead of procuring a policy from an insurer (Vehicle and Traffic Law, § 370), such permission to `self-insure' was not intended by the Legislature as a diminution of the uninsured motorist protection afforded to users of insured vehicles or other persons" (Matter of Country-Wide Ins. Co. [Manning], 96 AD2d, at 472, supra; see, Matter of Allstate Ins. Co. v Shaw, 52 N.Y.2d 818, supra [car rental company obligated to provide uninsured motorist coverage notwithstanding status as self-insurer]; Matter of New York City Tr. Auth. [Thom], 52 N.Y.2d 1032 *294 [New York City Transit Authority obligated to provide uninsured motorist coverage notwithstanding status as self-insurer]).
Although, in Country-Wide, we adopted the reasoning of the Appellate Division that self-insurers generally have the same statutory responsibility as other insurers to provide uninsured motorist coverage, that decision does not support the imposition of liability against the City in either of these proceedings. Under Insurance Law § 3420 (e), automobile liability insurance need only be issued on a "motor vehicle" as it is "defined in section three hundred eighty-eight of the vehicle and traffic law". Unlike the DOT vehicle in Country-Wide, however, a police vehicle is specifically excluded from the definition of "motor vehicle" as it appears in Vehicle and Traffic Law § 388 (2). Thus, there is no statutory obligation to insure police vehicles against liability for death or bodily injury.[2] Although this exclusionary language is not repeated in the uninsured motorist provision of the Insurance Law (Insurance Law § 3420 [f]), it would be illogical to assume that, while there is no legal obligation to insure police vehicles for death or bodily injury in the first instance, the City is nevertheless required to provide uninsured motorist coverage for its police vehicles. *295 Thus, recognizing the need to interpret the statutes relating to uninsured motorist coverage as a whole and in a way consistent with their legislative purpose (see, Matter of Allstate Ins. Co. v Shaw, 52 NY2d, at 820, supra; McKinney's Cons Laws of NY, Book 1, Statutes § 97), we hold that Insurance Law § 3420 (f)  providing that all "motor vehicle" insurance policies must contain uninsured motorist coverage  has no application to police vehicles.
Accordingly, the order of the Appellate Division should be reversed, and petitioner's applications for stays of arbitration denied. The certified question is not answered as unnecessary.
Chief Judge WACHTLER (dissenting).
I would affirm the order of the Appellate Division.
The Appellate Division correctly held that a municipality acting as a self-insurer must provide uninsured motorists benefits for injuries occurring in municipal vehicles, including police cars. The Legislature has not expressly provided any exemption for police vehicles from the obligation imposed by this statute and no explanation is given by the majority as to why the Legislature would want to create such an anomalous exception. Instead, the majority relies on a "logical" reading of two unrelated statutes concluding that if police vehicles need not be insured, those owning and operating them need not provide uninsured motorists' benefits. This approach violates the literal wording of the statutes as well as the legislative intent, produces an illogical result, and ignores the fact that the exception impliedly created is completely arbitrary because it does not appear to serve any rational purpose.
A literal interpretation of the statutes, exempting governmental entities from the requirement to provide insurance or proof of financial responsibility for death or injury caused by police vehicles (Vehicle and Traffic Law arts 6, 7; Insurance Law § 3420 [e]) but not exempting them from providing uninsured motorist protection (Insurance Law § 3420 [f]), is not at all illogical and serves to carry out the legislative intent.
The financial responsibility provisions require the owner of a motor vehicle to obtain insurance or prove financial ability to serve as a self-insurer for injuries caused by the operation of the vehicle. Exempting police vehicles from this law does not relieve governmental entities from legal responsibility for injuries caused by the operation of police vehicles. It simply *296 relieves them of the obligation to purchase liability insurance or prove financial ability to cover judgments resulting from such injuries. In granting this exemption the Legislature has obviously determined that any branch of the government should be financially capable of paying for injuries caused by police vehicles and need not prove or demonstrate that fact (Vehicle and Traffic Law arts 6, 7; see also, Insurance Law § 5201 [b]; § 5202 [a] [exempting from the MVAIC Act injuries "caused by" police vehicles]).
The uninsured motorist provision, however, requires an insurer of a motor vehicle to pay for injuries sustained by the insured or any occupant of the vehicle, caused by another uninsured motor vehicle. The purpose of this statute is to afford protection to those injured by uninsured and financially irresponsible motorists. This type of legislation was expressly designed to fill a gap in the law by imposing liability on the insurer where none would exist at common law (see, 1958 NY Legis Ann, at 244, 299, 436, 473). It applies to self-insurers (Matter of Allstate Ins. Co. v Shaw, 52 N.Y.2d 818), including municipalities operating municipal vehicles as self-insurers (Matter of Country-Wide Ins. Co. [Manning], 62 N.Y.2d 748; Matter of New York City Tr. Auth. [Thom], 52 N.Y.2d 1032). Exempting police vehicles from this law would do more than relieve them and the State from the unnecessary inconvenience of determining in advance their financial ability to pay damages for injuries sustained through the operation of police vehicles. It would, in fact, relieve governmental entities from uninsured motorist liability as owners or self-insurers for injuries sustained by employees or other occupants in such vehicles caused by a collision with another, uninsured vehicle. The Legislature has not expressly exempted police vehicles from this particular statutory liability (compare, Vehicle and Traffic Law § 388 [1], [2], making owners vicariously liable for negligent operation of their vehicles, but specifically exempting police vehicles). Reading this kind of exemption into the statute serves no apparent purpose.
In short, it appears that a statute designed only to eliminate the need to prove financial ability to meet legal obligations has been misapplied to extinguish one of those obligations.
Order reversed, with costs, and petitioner's applications for stays of arbitration denied. Certified question not answered as unnecessary.
NOTES
[1] The statutory scheme also protects those who are not beneficiaries of an automobile insurance policy. The uninsured victims of uninsured motorists may file a claim with the Motor Vehicle Accident Indemnification Corporation (MVAIC) for "death or bodily injury, arising out of a motor vehicle accident occurring within this state" (Insurance Law § 5208 [a] [1]). Here, of course, both Amato and Rutherford are beneficiaries of the uninsured motorist indorsement contained in their respective policies with State Farm, and are thus ineligible to file a claim with the MVAIC (Insurance Law § 5202 [b]; § 5208).
[2] Additionally, we note that police vehicles are not "motor vehicles" subject to the financial security and responsibility requirements of the Vehicle and Traffic Law (Vehicle and Traffic Law arts 6, 7); of course, this statutory exemption is not, as the dissent would seem to suggest, the basis for the majority holding in this case, which rests rather on the exemption for police vehicles found under Vehicle and Traffic Law § 388 (2). Moreover, although the uninsured occupant of a police vehicle may file a claim with the MVAIC for injuries sustained in an accident caused by an uninsured motor vehicle, police vehicles are exempted from the provisions of the MVAIC statute to the extent that otherwise eligible claimants are barred from filing a claim for injuries caused by the negligent operation of a police vehicle (Insurance Law § 5202 (a), (b); § 5208; see, Matter of Downey [MVAIC], 43 AD2d 168, 175-176; Matter of Fuscaldo [MVAIC], 24 AD2d 744).

By contrast, police vehicles are expressly included under the "no-fault" provisions of the Insurance Law, requiring the City to provide first-party benefits for loss arising out of the use or operation of police vehicles (Vehicle and Traffic Law § 321 [2]; Insurance Law § 5102 [f]; § 5103). Thus, contrary to the view expressed by the dissent, the statutory exemption for police vehicles under the uninsured motorist statute does not relieve governmental entities from liability for injuries sustained in police vehicles that are caused by uninsured motorists. Indeed, the specific inclusion of police vehicles under the "no-fault" provisions is evidence of the Legislature's intent to be selective as to the kinds of insurance requirements that should be imposed on these vehicles. Imposition of any additional municipal uninsured motorist liability, therefore, is a matter of policy and choice for the Legislature.