[973 NYS2d 801]

In the Matter of State Farm Mutual Automobile Insurance Company, Respondent, v Patrick Fitzgerald, Appellant.

Second Department, November 6, 2013

## APPEARANCES OF COUNSEL

*Frank J. Laine, P.C.*, Plainview (*Frank Braunstein* of counsel), for appellant.

*Richard T. Lau & Associates* and *Rivkin Radler LLP*, Uniondale (*Cheryl F. Korman, Evan H. Krinick* and *Harris J. Zakarin* counsel), for respondent.

## OPINION OF THE COURT

HALL, J.

On this appeal, we are asked to consider whether a police vehicle qualifies as a "motor vehicle," as that term is used in a certain supplementary uninsured/underinsured motorist endorsement. For the reasons that follow, we conclude that it does.

The appellant, Patrick Fitzgerald, a police officer, was riding as a passenger in a New York City Police Department vehicle, which was driven by fellow officer Michael Knauss, when he was injured in an automobile accident. The police vehicle was involved in a collision with a vehicle that was underinsured. Fitzgerald demanded arbitration and sought benefits under the supplementary uninsured/underinsured motorist endorsement of Knauss's insurance policy with the respondent, State Farm Mutual Automobile Insurance Company (hereinafter State Farm). In that endorsement, an "insured" is defined as the named insured (i.e., Knauss) and "any other person while occupying . . . any other *motor vehicle* . . . being operated by [Knauss]" (emphasis added).

State Farm filed a petition to permanently stay the arbitration, arguing that Fitzgerald was not an "insured" under the uninsured/underinsured motorist endorsement. State Farm contended, inter alia, that the police vehicle involved in the accident was not a "motor vehicle" for purposes of the endorsement.

The Supreme Court granted State Farm's petition and permanently stayed the arbitration. The Supreme Court reasoned that the definition of "insured" under the uninsured/ underinsured motorist endorsement did not include Fitzgerald, since the police vehicle involved in the accident did not qualify as a "motor vehicle," as that term was used in the endorse-

ment. The Supreme Court, relying on *Matter of State Farm Mut. Auto. Ins. Co. v Amato* (72 NY2d 288 [1988]), found that, since police vehicles were specifically excluded from the definition of a motor vehicle in Vehicle and Traffic Law § 388 (2), Fitzgerald was not in a motor vehicle at the time of the accident and, consequently, was not an "insured" under the uninsured/underinsured motorist endorsement. Fitzgerald appeals, and we reverse.

Vehicle and Traffic Law § 125, which is found in title I, article 1 of the Vehicle and Traffic Law, "Words and Phrases Defined," defines "Motor vehicles," in part, as "[e]very vehicle operated or driven upon a public highway which is propelled by any power other than muscular power." The statute excludes from the definition of "motor vehicle" certain vehicles that are not at issue here.

Vehicle and Traffic Law § 388 is found in title III, article 11 of the Vehicle and Traffic Law, which deals with civil liability. In relevant part, Vehicle and Traffic Law § 388 (1) provides that "[e]very owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle." Vehicle and Traffic Law § 388 (2) states, in pertinent part, that "[a]s used in this section, 'vehicle' means a 'motor vehicle,' as defined in [Vehicle and Traffic Law § 125] of this chapter, except fire and police vehicles."

Contrary to State Farm's contention, *Amato* is inapposite. In *Amato,* the Court of Appeals was faced with the issue of whether the City of New York, as an unregulated self-insurer, was statutorily required to provide uninsured motorist coverage to two of its police officers who were injured when their police vehicles were struck by uninsured motor vehicles (*see Matter of State Farm Mut. Auto. Ins. Co. v Amato*, 72 NY2d at 290). The police officers in *Amato* were covered by separate individual policies issued by State Farm, which provided uninsured motorist coverage. The City successfully argued that State Farm was obligated to provide the officers with uninsured motorist benefits, and that the City had no obligation to provide such benefits, because police vehicles were specifically exempted from the requirements of Insurance Law § 3420 (f), which mandates that insurers provide uninsured motorist coverage in every New York motor vehicle liability policy (*see Matter of State Farm Mut. Auto. Ins. Co. v Amato*, 72 NY2d at 292; *see also Raffellini v State Farm Mut. Auto. Ins. Co.*, 9 NY3d 196, 200 [2007]).

Under Insurance Law § 3420 (e), every automobile liability insurance policy covering a "vehicle as defined in [Vehicle and Traffic Law § 388]" is required to insure against liability for death or bodily injury. However, police vehicles are specifically excluded from the definition of a "vehicle" in Vehicle and Traffic Law § 388 (2). Thus, in *Amato,* the Court of Appeals concluded that the City had no statutory obligation to insure police vehicles against liability for death or bodily injury (*see Matter of State Farm Mut. Auto. Ins. Co. v Amato,* 72 NY2d at 294). *Amato,* however, does not stand for the proposition that Vehicle and Traffic Law § 388 (2) contains the exclusive definition of a "motor vehicle."

The issue here is whether the term "motor vehicle," as used in Knauss's State Farm uninsured/underinsured motorist endorsement, includes police vehicles. *Amato* is inapposite because that case was concerned with the City's obligation, as an unregulated self-insurer, to provide coverage to its police officers injured in police vehicles. If we were to apply *Amato* to this case, it would result in the denial of uninsured/underinsured motorist coverage virtually every time a police officer is injured in a car accident involving a police vehicle, especially since a municipality is under no obligation to provide such coverage to its police officers. This result would be in derogation of the legislature's "grave concern that motorists who use the public highways be financially responsible to ensure that innocent victims of motor vehicle accidents be recompensed for their injuries and losses" (*Matter of Allstate Ins. Co. v Shaw,* 52 NY2d 818, 819 [1980]; *see* Vehicle and Traffic Law § 310).

Contrary to State Farm's contention, Vehicle and Traffic Law § 125, instead of Vehicle and Traffic Law § 388 (2), should be used to define the term "motor vehicle," as it appears in the uninsured/underinsured motorist endorsement. Vehicle and Traffic Law § 125 is a general provision that defines the relevant terminology for the entire Vehicle and Traffic Law. In fact, Vehicle and Traffic Law § 388 (2) acknowledges this by incorporating by reference the Vehicle and Traffic Law § 125 definition of "motor vehicle." Additionally, it has been recognized that uninsured motorist coverage extends to all "motor vehicles," as defined by Vehicle and Traffic Law § 125 (*see Matter of Progressive Northeastern Ins. Co. v Scalamandre,* 51 AD3d 932, 933 [2008]; *Matter of Liberty Mut. Fire Ins. Co. v Rondina,* 32 AD3d 1230, 1231 [2006]; *see also* Insurance Law § 5202 [a]; *Matter of Country-Wide Ins. Co. v Wagoner,* 45 NY2d 581 [1978]).

Police vehicles fall within the definition of a "motor vehicle" under Vehicle and Traffic Law § 125 because they constitute a "vehicle operated or driven upon a public highway which is propelled by any power other than muscular power," and they do not fall within any of the exclusions provided in the statute. Thus, the police vehicle at issue here falls within the definition of a "motor vehicle" under the uninsured/underinsured motorist endorsement. Indeed, this interpretation is consistent with common experience and the reasonable expectations of the average policyholder (*see Federal Ins. Co. v International Bus. Machs. Corp.*, 18 NY3d 642, 646, 650 [2012]; *Cragg v Allstate Indem. Corp.*, 17 NY3d 118, 122 [2011]). Furthermore, Fitzgerald is an "insured" within the meaning of the uninsured/ underinsured motorist endorsement, because he was a person occupying a "motor vehicle" being operated by Knauss.

Accordingly, State Farm was not entitled to a permanent stay of arbitration, and its petition should have been denied. The order is reversed, on the law, and the petition is denied.

RIVERA, J.P., ROMAN and MILLER, JJ., concur.

Ordered that the order is reversed, on the law, with costs, and the petition is denied.