OPINION OF THE COURT
Maria G. Rosa, J.
Petitioner commenced this proceeding seeking a stay of arbitration pursuant to CPLR 7503 (b). Respondent Beale moved to dismiss the petition on various grounds, including an alleged failure to name necessary parties. In a decision and order dated May 12, 2016 this court granted respondent’s motion to the extent that it held that the Town of Poughkeepsie was a necessary party. The Town of Poughkeepsie has now filed an answer and a motion to dismiss on essentially the same grounds asserted in respondent Beale’s motion to dismiss.
The relevant facts underlying this proceeding were set forth in this court’s May 12, 2016 decision and order. Petitioner seeks a permanent stay of supplementary uninsured/underinsured motorist (SUM) coverage arbitration and a declaratory judgment that the Town of Poughkeepsie police vehicle respondent Beale was operating at the time of her October 31, 2011 accident did not have SUM coverage and thus her claim is not subject to SUM arbitration.
Read in conjunction, the business auto coverage form declarations page and the business auto coverage form of the subject insurance policy state that SUM coverage is provided to only those vehicles required by law in the state where they are licensed or garaged to have, and are unable to reject, uninsured motorist coverage. Contracts made by private parties are generally construed in the light of the applicable law at the time of their execution. (See generally Bloomfield v Bloomfield, 97 NY2d 188 [2001].) In 1988 the Court of Appeals held that in New York State there was no legal obligation for police vehicles to have uninsured motorist coverage. (See Matter of State Farm Mut. Auto. Ins. Co. v Amato, 72 NY2d 288 [1988].) Hence, the law in effect at the time the parties executed the insurance contract was that New York State did not mandate uninsured motorist coverage for police vehicles. As the standard in the policy for determining if there was SUM coverage for a particular vehicle was whether New York law mandated uninsured motorists coverage for that vehicle, the *882 subject policy did not provide SUM coverage for the Town’s police vehicle at the time of respondent’s accident. Nor did New York law mandate SUM coverage for police vehicles at the time petitioner issued the policy. While in 2013 the Appellate Division found that SUM coverage was mandatory for police vehicles (see Matter of State Farm Mut. Auto. Ins. Co. v Fitzgerald, 112 AD3d 166 [2d Dept 2013]), this decision was issued after the policy period and was also reversed on appeal. (See Matter of State Farm Mut. Auto. Ins. Co. v Fitzgerald, 25 NY3d 799 [2015].) While these cases could demonstrate that there was ambiguity as to the state of the law with respect to mandatory SUM coverage for police vehicles as of 2011, SUM coverage for such vehicles was not mandatory at that time. Moreover, the standard in the policy for whether police vehicles had SUM coverage was whether uninsured motorist coverage was mandatory, not whether SUM coverage was mandatory.
Based upon the foregoing, petitioner is correct in its assertion that the insurance policy did not provide SUM coverage to police vehicles.
The court’s analysis, however, does not end there. Respondents maintain that due to petitioner’s unreasonable delay, petitioner should be equitably estopped from asserting an exclusion from coverage. In a letter dated December 7, 2011 respondent notified petitioner of her intention to make a SUM claim under the policy. The record further contains unrefuted evidence that in November 2011 petitioner inspected and photographed the police car Beale was operating at the time of the accident and sent photographs of the damaged vehicle to Farmers Insurance in connection with a subrogation claim. This demonstrates that petitioner knew as early as 2011 that respondent was making a claim for SUM benefits for damages she incurred while operating a police vehicle.
In March 2012 respondent commenced a negligence action against Basil Charlamow, the operator of the other motor vehicle involved in the 2011 accident. She sent a courtesy copy of the summons and complaint to petitioner on March 7, 2012. Between January 2014 and October 2014 there were ongoing telephone and written communications about respondent’s SUM claim. Petitioner’s senior claims adjustor, Charlotte Winder, advised that she was the claims adjustor for the claim, assigned a claim number for use during the SUM claims process, inquired about the underlying lawsuit and advised that there was one million dollars in applicable SUM coverage. *883 In February 2014 an attorney representing both the Town and petitioner sent respondent a letter acknowledging the SUM claim and requiring compliance with the SUM endorsement to provide information pertaining to the automobile liability insurance policy covering Charlamow’s vehicle, to report any information about excess insurance or other coverages and to obtain consent to any settlement of her claim against Char-lamow. Subsequent communications between respondent’s attorney and counsel for the Town and petitioner ensued through May 2014 when Charlamow’s insurance carrier tendered its $25,000 policy limit to respondent to settle the negligence action. Thereafter, respondent obtained written consent from petitioner to settle her claim against Charlamow, executed a general release in favor of Charlamow and discontinued the negligence action. Arbitration discovery then proceeded in accordance with the terms of the SUM endorsement. Respondent provided petitioner with authorizations for medical and workers’ compensation records and appeared for both an examination under oath and an independent medical examination. Settlement negotiations then ensued which included the parties going to mediation. On November 16, 2015, respondent filed a formal demand for arbitration. Petitioner filed a notice of appearance in the SUM arbitration and on December 9, 2015 the arbitrator provided all parties with a notice of a pre-hearing telephone conference. The following day, petitioner filed the instant petition seeking a declaration that there was no SUM coverage under the policy.
“The purpose of equitable estoppel is to preclude a person from asserting a right after having led another to form the reasonable belief that the right would not be asserted, and loss or prejudice to the other would result if the right were asserted.” (Matter of Shondel J. v Mark D., 7 NY3d 320, 326 [2006].) The doctrine is designed to promote fairness by preventing someone from enforcing rights that would work injustice on a person who was misled into a detrimental change of position based upon a justifiable reliance. (Id.) In the insurance context, the doctrine is generally invoked when an insurance carrier assumes the defense of an action and controls its defense on behalf of an insured with knowledge of facts constituting a defense to coverage without reserving its rights to deny coverage. (See generally Albert J. Schiff Assoc. v Flack, 51 NY2d 692 [1980].) Under such circumstances, estoppel may lie if the insured can demonstrate that it has been prejudiced *884 by the insurance carrier’s actions. (See National Indem. Co. v Ryder Truck Rental, 230 AD2d 720 [2d Dept 1996].)
This case presents a different factual scenario. Petitioner did not assume the defense of an action on behalf of respondent. Instead, it acted in all respects since 2011 through the commencement of this proceeding as if respondent had SUM coverage for her police vehicle as of the date of the 2011 accident. In reliance upon affirmative representations as to SUM coverage and after having obtained petitioner’s consent, respondent settled her negligence action against Charlamow for $25,000. The settlement included giving Charlamow a general release. Respondent maintains that petitioner should now be estopped from denying SUM coverage because she relied upon the affirmative representation of coverage in settling the negligence action against Charlamow. She claims she has been prejudiced because she executed a general release and is now foreclosed from pursuing claims against Charlamow for damages she believed were available through SUM coverage.
In opposition, petitioner does not dispute having believed that there was SUM coverage and representing same to the respondent since she notified it of her claim. Petitioner concedes participating in discovery and negotiation of respondent’s SUM claim. Instead, petitioner asserts that the police vehicle did not have SUM coverage under the policy and that its change in position was primarily due to the July 2015 decision in Matter of State Farm Mut. Auto. Ins. Co. v Fitzgerald (25 NY3d 799 [2015]). Petitioner further relies upon a body of law holding that estoppel cannot “create coverage where none exists under a policy.” (See Philadelphia Indem. Ins. Co. v City of New York, 2011 WL 1237586, *6, 2011 US Dist LEXIS 31318, *17 [SD NY, Mar. 24, 2011, No. 09 Civ 10432 (PGG)]; see generally Wausau Ins. Cos. v Feldman, 213 AD2d 179, 180 [1st Dept 1995].)
Estoppel is an equitable doctrine and its applicability is ultimately based upon the particular facts present. On the facts of this case, petitioner is estopped from denying SUM coverage. Petitioner was on notice of respondent’s SUM claim as early as 2011. Petitioner acknowledged the claim and insisted that respondent obtain its consent prior to settling her underlying personal injury action. Petitioner further required respondent to participate in extensive discovery in connection with her SUM claim and consented to participate in mediation and arbitration. As late as December 2015 petitioner continued *885 to suggest its intent to settle respondent’s SUM claim. It was not until it commenced this proceeding on December 10, 2015, over four years after being noticed of respondent’s claim and five months after the Court of Appeals decision in Matter of State Farm Mut. Auto. Ins. Co. v Fitzgerald, that it first informed respondent of its determination that SUM coverage was not available. Petitioner does not dispute respondent’s factual allegations as to the numerous representations it made with respect to affording her SUM coverage for her claim. Nor can it credibly be disputed that respondent has been prejudiced by the untimely denial of SUM coverage as she settled and issued a release in the negligence action in which she could have pursued all of her damages claims. The court further rejects petitioner’s claim that the doctrine of equitable estoppel may never be employed to create coverage not provided for in an insurance policy. (See Reeve v General Acc. Ins. Co. of N.Y., 239 AD2d 759 [3d Dept 1997].) Under the unique circumstances of this case and because there are no disputed issues of fact warranting a trial, the court finds that petitioner is equitably estopped from denying SUM coverage.
Based on the foregoing, it is hereby ordered that the petition seeking a stay of arbitration pursuant to CPLR 7503 (b) and a declaratory judgment that there is no coverage for respondent’s SUM claim under the subject insurance policy is denied. It is further ordered that respondent’s motion seeking a declaratory judgment that petitioner is equitably estopped from denying SUM coverage for her claim based on the motor vehicle accident that occurred on October 31, 2011 is granted. It is further ordered that the motion of the Town respondent directing petitioner to proceed to supplementary uninsured/ underinsured motorist coverage arbitration is granted.