================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 119
In the Matter of State Farm
Mutual Automobile Insurance
Company,
            Appellant,
        v.
Patrick Fitzgerald,
            Respondent.

            Henry Mascia, for appellant.
            Frank Braunstein, for respondent.

ABDUS-SALAAM, J.:

        More than a quarter-century ago, in Matter of State

Farm Mut. Auto. Ins. Co. v Amato (72 NY2d 288 [1988]), we

squarely "h[e]ld" that "Insurance Law § 3420 (f) -- providing

that all 'motor vehicle' insurance policies must contain

- 1 -

uninsured motorist coverage -- has no application to police vehicles" (id. at 295).  Nonetheless, in this case, the Appellate Division deemed that holding inapplicable to supplementary uninsured/underinsured motorist (SUM) coverage mandated by Insurance Law § 3420 (f) (2).  Distinguishing Amato on its facts, the Appellate Division proceeded to define "motor vehicle" for purposes of statutorily required SUM coverage as inclusive of police vehicles.

This was error.  With respect to the statutory definition of the critical term "motor vehicle," there is no material distinction between the uninsured motorist coverage at issue in Amato and the disputed SUM coverage here, and the factual differences between this case and Amato do not compel a different result.  Consequently, a police vehicle is not a "motor vehicle" covered by a SUM endorsement under Insurance Law § 3420 (f) (2) (a).  Furthermore, to the extent there is any question of the continuing precedential force of Amato -- and the parties here have not raised such a question -- the language and legislative history of Insurance Law § 3420, as well as the doctrine of stare decisis, fully support our retention of Amato as binding precedent in this matter of statutory interpretation.

I

While riding in a police vehicle driven by fellow Officer Michael Knauss, respondent Police Officer Patrick Fitzgerald was injured when the allegedly intoxicated driver of

an underinsured vehicle struck the police car.  At the time,
Knauss maintained an automobile liability insurance policy issued
by appellant State Farm Mutual Automobile Insurance Company
(State Farm), and the policy included a SUM endorsement.  In
addition to covering Knauss as the named insured and his family,
the SUM endorsement insured against injuries to "any other person
while occupying" Knauss's personal vehicle or "any other motor
vehicle while being operated by [the named insured] or [the named
insured's] spouse" (emphasis added).  The policy did not define
the term "motor vehicle."[1]

On or before July 25, 2011, GEICO, the insurer for the
underinsured motorist who had hit Knauss's car, tendered payment
to Fitzgerald in the amount of $25,000, which was the limit of
the underinsured motorist's policy.  On August 18, 2011, based on
the injuries he received while occupying Knauss's police vehicle
during the accident, Fitzgerald made a demand upon State Farm for
underinsured motorist arbitration under the SUM endorsement of
Knauss's policy.  State Farm refused to make any payment to
Fitzgerald on the ground that he had occupied a police vehicle at
the time of the accident, which was not a covered "motor vehicle"
within the meaning of the SUM endorsement.  State Farm then filed

---

[1]  The record does not disclose whether Fitzgerald had
automobile insurance or liability insurance at the time of the
accident.  In his motion papers and correspondence with State
Farm, Fitzgerald did not discuss his own insurance status, and he
did not claim to be uninsured.

a petition to permanently stay arbitration based on the asserted unavailability of SUM benefits for Fitzgerald.

Supreme Court granted State Farm's petition to permanently stay arbitration. As relevant here, the court held that, although an individual who is the principal insured can receive benefits under his or her own insurance policy when he or she is in a police vehicle during an accident, that rule does not apply to an individual such as Fitzgerald, who seeks coverage under a SUM endorsement in someone else's insurance policy. Citing Amato, the court determined that Insurance Law § 3420 (f) (2) (a), which controls the SUM endorsement in Knauss's policy, incorporates Vehicle and Traffic Law (VTL) 388 (2)'s definition of a covered "motor vehicle," which specifically excludes police vehicles such as the one containing Fitzgerald at the time of the accident. Thus, the court concluded that Knauss's policy does not cover Fitzgerald, and it permanently stayed arbitration on Fitzgerald's claim for coverage. Fitzgerald appealed.

The Appellate Division unanimously reversed Supreme Court's order and denied the petition to permanently stay arbitration, holding that the police car in which Fitzgerald had been riding at the time of the accident constituted a "motor vehicle" under the SUM endorsement in Knauss's automobile insurance policy (see 112 AD3d 166, 167-170). In that regard, since neither the SUM endorsement itself nor Insurance Law § 3420 (f) defines the term "motor vehicle," the Appellate Division

looked to the provisions of the VTL defining that term (see id. at 168). In that court's view, since VTL 125 sets forth the general definition of a "motor vehicle" to be used throughout the VTL, that statute provides the most widely applicable definition of the term, which encompasses all motor-powered vehicles and includes police vehicles (see id. at 168-169). Thus, the court opined, VTL 125 "should be used to define the term 'motor vehicle,' as it appears in the uninsured/underinsured motorist endorsement," because "[VTL 125] is a general provision that defines the relevant terminology for the entire [VTL]" (id. at 169). Citing its prior decision in Matter of Progressive Northeastern Ins. Co. v Scalamandre (51 AD3d 932 [2d Dept 2008]) and the Fourth Department's decision in Matter of Liberty Mut. Fire Ins. Co. v Rondina (32 AD3d 1230 [4th Dept 2006]), the court said, "Additionally, it has been recognized that uninsured motorist coverage extends to all 'motor vehicles,' as defined by [VTL 125]" (id.).

The court noted that VTL 388 (2) defines the term "vehicle" for purposes of civil liability as "a 'motor vehicle,' as defined in [VTL 125], except fire and police vehicles," but the court found that definition inapplicable because VTL 388 (2) does not feature the most common general definition of "vehicle" and defines the term "vehicle" rather than the critical term "motor vehicle" at issue here (id.). The court attempted to distinguish Amato, positing that, there, this Court decided only

that New York City as a self-regulating insurer did not have to provide liability coverage for police vehicles under Insurance Law §§ 3420 (e) and 3420 (f) (1) because a police vehicle does not qualify as a "motor vehicle" under those statutes, whereas here the issue is whether a separate statutory subsection, Insurance Law § 3420 (f) (2), classifies a police car as a "motor vehicle" (see id. at 168-169).  Given that VTL 125's definition of "motor vehicle" applies to Insurance Law § 3420 (f) (2) and encompasses police vehicles, the court maintained, "the police vehicle at issue here falls within the definition of a 'motor vehicle' under the uninsured/underinsured motorist endorsement," and consequently, respondent was entitled to SUM benefits under the policy that State Farm issued to Knauss (id. at 170).

Upon State Farm's application, we granted a stay of the Appellate Division's order and leave to appeal.  We now reverse.

II

Principles of Interpretation, Insurance Law § 3420 and *Amato*

Although provisions of an insurance policy drafted by the insurer are generally construed against the insurer if ambiguous (see Dean v Tower Insurance Company of New York, 19 NY3d 704, 708 [2012]), a policy provision mandated by statute must be interpreted in a neutral manner consistently with the intent of the legislative and administrative sources of the legislation (see Matter of Country-Wide Ins. Co. v Wagoner, 45 NY2d 581, 586-587 [1978]).  Since State Farm did not choose the

terms of the SUM endorsement here of its own accord but, rather,
was required to offer SUM coverage in compliance with the terms
of Insurance Law § 3420 (f) (2) (A) and Department of Insurance
regulations (see 11 NYCRR 60-2.3 [f]), we must interpret the SUM
endorsement and the language of the statute in the manner
intended by the neutral sources of that enactment (see generally
Governor's Approval Memorandum, Bill Jacket, L 1977, ch 892; see
also Bill Jacket, L 1958, ch 759; Letter of Executive Director of
Law Rev. Comm. to Governor's Counsel, Bill Jacket, L 1958, ch
577).

Insurance Law § 3420 specifies the standard forms of
coverage that must be included in a liability insurance policy.
Subsection (e) requires automobile insurance policies to insure
against civil liability for the negligence of those who drive the
principal insured's car with his or her permission, saying:

> "No policy or contract of personal injury
> liability insurance or of property damage
> liability insurance, covering liability
> arising from the ownership, maintenance or
> operation of any motor vehicle or of any
> vehicle as defined in section three hundred
> eighty-eight of the vehicle and traffic law,
> or an aircraft, or any vessel as defined in
> section forty-eight of the navigation law,
> shall be issued or delivered in this state
> . . . unless it contains a provision insuring
> the named insured against liability for death
> or injury sustained . . . as a result of
> negligence in the operation or use of such
> vehicle, aircraft or vessel . . ." (Insurance
> Law § 3420 [e] [emphasis added]).

Subsection (f) (1) mandates that automobile insurance
policies feature uninsured motorist coverage, which covers

liability arising from an accident involving the named insured

and a motorist who has no applicable insurance coverage.  Thus,

subsection (f) (1) states that:

> "[n]o policy insuring against loss resulting
> from liability imposed by law for bodily
> injury or death suffered by any natural
> person arising out of the ownership,
> maintenance and use of a <u>motor vehicle</u> by the
> insured shall be issued or delivered . . .
> unless it contains a provision whereby the
> insurer agrees that it will pay to the
> insured, as defined in that provision . . .
> all sums  . . . which the insured or his
> legal representative shall be entitled to
> recover as damages from an owner or operator
> of an uninsured motor vehicle." (Insurance
> Law § 3420 [f] [1] [emphasis added]).

Subsection (f) (2) declares that "[a]ny such policy

shall, at the option of the insured, also provide supplementary

uninsured/underinsured motorists insurance for bodily injury,"

which is a species of uninsured motorist insurance that covers

liability stemming from accidents involving the named insured and

a motorist who possesses automotive insurance with limits or

other restrictions that are inadequate to cover the full extent

of the loss.  The statute further states that SUM coverage is

triggered "if the limits of liability under all bodily injury

liability bonds and insurance policies of another motor vehicle

liable for damages are in a lesser amount than the bodily injury

liability insurance limits of coverage provided by such policy"

(Insurance Law § 3420 [f] [2] [A]).  Insurance Law § 3420 (f) (2)

does not use the term "motor vehicle," but because that

subsection applies to "[a]ny such policy," referring to a policy

of the kind described in Insurance Law § 3420 (f) (1), Insurance Law § 3420 (f) (2) necessarily restricts SUM coverage to "motor vehicle[s]" in the same manner as subsection (f) (1).

As noted, Insurance Law §§ 3420 (e) and 3420 (f) (1) do not directly define "motor vehicle" in so many words, but Insurance Law § 3420 (e) does refer to "a motor vehicle or a vehicle as defined in [VTL 388 (2)]."  VTL 388 is the sole provision of VTL article 11, which governs civil liability for negligence in the operation of vehicles.  VTL 388 (2) states, "As used in this section, 'vehicle' means a 'motor vehicle', as defined in [VTL 125], except fire and police vehicles," and certain other vehicles not relevant here (see VTL 388 [2]).  The VTL also includes a definition of the term "motor vehicle" in VTL 125, which is part of the article defining terms of general use in the VTL.  Under that statute, "motor vehicle" means "[e]very vehicle operated or driven upon a public highway which is propelled by any power other than muscular power," with exceptions for all-terrain vehicles, snowmobiles and mobility aids for the disabled (VTL 125).  VTL 125 exempts police vehicles from registration requirements under title IV of the VTL, but does not otherwise list any exclusion for police vehicles (see VTL 125).  Other provisions of the VTL and the Insurance Law also set forth definitions of the term "motor vehicle," often exempting police vehicles (see VTL 311 [2]; Insurance Law § 5202 [a]).

In Amato, this Court resolved two consolidated cases by specifying the types of vehicles that, when involved in an accident, can trigger uninsured motorist coverage under Insurance Law § 3420 (f).  In one case, Police Officer Amato had uninsured motorist coverage for his personal vehicle under a policy issued by State Farm (see Amato, 72 NY2d at 291).  The City insured any police vehicles used by Amato, but it did not provide uninsured motorist coverage under its policy (see id. at 290-291).  While Amato was riding on his police scooter, he was struck by a stolen taxi cab, which was not covered by the cab owner's insurance (see id. at 290).  When Amato filed a claim with State Farm, State Farm petitioned for a permanent stay of arbitration under the policy, asserting that Amato had to look to the City for uninsured motorist coverage because the City was required by statute to provide such coverage (see id. at 291).  Special Term denied the petition, reasoning that the City did not have to give Amato uninsured motorist coverage and that therefore State Farm was responsible for covering Amato's loss (see id.).

In the companion case, a motorist, who ultimately turned out not to have active insurance coverage, ran into the rear of Police Officer Rutherford's police car (see id. at 291).  Rutherford filed a claim with State Farm, which, as in Amato's case, denied coverage, citing the City's status as the primary insurer and its supposed statutory obligation to provide uninsured motorist coverage for police vehicles (see id. at 292).

In a consolidated appeal in Amato's and Rutherford's cases, the Appellate Division reversed and held that the City had the primary obligation to grant uninsured motorist coverage to the officers pursuant to Insurance Law § 3420 (f) (see id. at 292; Amato, 129 AD2d 221, 225-227 [2d Dept 1987]).

On further appeal, this Court reversed (72 NY2d 288, 290-292 [1988]).  The Court began its opinion by describing the statutory provisions, such as VTL articles 6 and 7, which reflect the Legislature's desire to ensure that motorists have sufficient financial security to cover the consequences of an accident, and the Court explained that Insurance Law § 3420 (f) mandates the inclusion of uninsured motorist coverage in every automobile insurance policy issued in New York addressing the "use of a motor vehicle by the insured" (id. at 292-293, quoting Insurance Law § 3420 [f]).[2]

The Court agreed with the Appellate Division that self-insurers, such as the City, "generally have the same statutory responsibility as other insurers to provide uninsured motorist coverage," but it found that point irrelevant to the question at hand because no liability coverage existed at all, regardless of the insurer, if the liability does not arise from the use of a "motor vehicle" within the meaning of Insurance Law

---

[2]  At the time of the Court's decision in Amato, Insurance Law § 3420 (f) had already been divided into subsections (1) and (2) (see L 1984, ch 367), though the Court did not distinguish between those two subsections for purposes of its analysis.

§ 3420 (e) (id. at 294). And, the Court determined, Insurance Law § 3420 (e) excludes police vehicles from the term "motor vehicle", for that statute cites VTL 388 (2), which governs civil liability for negligence in the use of motor vehicles and explicitly excludes police vehicles from its scope (see id.). "Although this exclusionary language is not repeated in the uninsured motorist provision of the Insurance Law (Insurance Law § 3420 [f])," the Court concluded that "it would be illogical to assume that, while there is no legal obligation to insure police vehicles for death or bodily injury in the first instance, the City is nevertheless required to provide uninsured motorist coverage for its police vehicles" (id.).

Thus, the Court stated that, in light of the "need to interpret the statutes relating to uninsured motorist coverage as a whole and in a way consistent with their legislative purpose," "we hold that Insurance Law § 3420 (f) -- providing that all 'motor vehicle' insurance policies must contain uninsured motorist coverage -- has no application to police vehicles" (id. at 295). The Court further "h[e]ld" that "there is no such statutory obligation" for the City, as an unregulated self-insurer, to insure police officers against injuries caused by an uninsured motorist hitting their police vehicles (id. at 290). Accordingly, the Court decided that the City had no statutory obligation to provide uninsured motorist coverage for Amato's and Rutherford's police vehicles (see id. at 290, 294). Two Judges

dissented because, in their view, the Legislature's failure to create an express exemption for police vehicles within the text of Insurance Law § 3420 (f) reflected a legislative intent to place all motor vehicles, including police vehicles, within the scope of statutory uninsured motorist coverage (see id. at 295-296 [Wachtler, C.J., dissenting]).

## The Parties' Contentions

With this legal background in mind, we turn to the arguments advanced by the parties here.  In this case, State Farm and Fitzgerald agree that the disputed SUM endorsement's coverage of accidents involving a "motor vehicle" must use the same definition of that term employed by Insurance Law § 3420 (f), and Fitzgerald has not proceeded under any other statute, such as the No-Fault Law.  However, the parties dispute whether that definition includes police vehicles like the one occupied by Fitzgerald.

State Farm contends that, because Insurance Law § 3420 (e) refers to VTL 388 (2)'s definition of "vehicle," which in turn incorporates VTL 125's definition of "motor vehicle" and yet also excludes police vehicles, the closely related provisions of Insurance Law § 3420 (f) should be read to similarly define "motor vehicle" in accordance with VTL 388 (2), thereby excluding police vehicles from SUM coverage.  According to State Farm, Amato adopted this approach, as the Amato Court interpreted the term "motor vehicle" in Insurance Law § 3420 (f) (1) to have the

same meaning as it does in Insurance Law § 3420 (e), i.e., to exclude police vehicles. By logical extension, State Farm urges, "motor vehicle" must mean the same thing under Insurance Law § 3420 (f) (2) as it does in subsections (e) and (f) (1) because the statute must be interpreted as a cohesive whole.

In response, Fitzgerald does not argue that Amato was wrongly decided or should be altered in any way, but instead tries to parse that decision and the statutory text in a manner favorable to him. Fitzgerald asserts that Insurance Law § 3420 (f) must be read to incorporate the most common and generalized statutory meaning of the term "motor vehicle," and that therefore one must look to the general definition of "motor vehicle" in VTL 125 to define the same term in the insurance statute. Because VTL 125 defines a "motor vehicle" as essentially any powered vehicle, including a police vehicle, Fitzgerald posits that Insurance Law § 3420 (f) provides SUM coverage for accidents involving police vehicles via its inherent incorporation of the VTL 125 definition of "motor vehicle." In Fitzgerald's view, it does not matter that Insurance Law § 3420 (e) covers accidents arising from the operation "of any motor vehicle or of any vehicle as defined in [VTL 388 (2)]" (emphasis added) because that statute only references VTL 388 (2) to define the distinct term "vehicle," and it does not define the separate term "motor vehicle." That being so, Fitzgerald says, Insurance Law § 3420 (f) does not adopt VTL 388 (2)'s exclusion of police vehicles

from the definition of "vehicle" because Insurance Law § 3420 (f)
does not use the term "vehicle" at all, instead using the
entirely different term "motor vehicle" as defined in VTL 125 to
establish the breadth of its coverage.  According to Fitzgerald,
Amato is factually distinguishable because that case involved the
liability of an unregulated self-insurer for uninsured motorist
coverage under Insurance Law § 3420 (f) (1), whereas the issue
here is whether a private insurer must provide SUM coverage under
Insurance Law § 3420 (f) (2).

The simple answer to Fitzgerald's claims, and hence to
this whole case, is that Amato means what it says: "Insurance Law
§ 3420 (f) -- providing that all 'motor vehicle' insurance
policies must contain uninsured motorist coverage -- has no
application to police vehicles" (Amato, 72 NY2d at 295).  Just as
the term "motor vehicle" in Insurance Law § 3420 (f) generally,
and subsection (1) in particular, does not encompass police
vehicles, that same term in subsection (2) likewise does not
bring police vehicles within its scope.  Therefore, both
uninsured motorist coverage under subsection (1) and SUM coverage
under subsection (2) clearly exclude police vehicles in
accordance with section (f) (1)'s reference to VTL 388 (2).

Indeed, as we have noted post-Amato, SUM coverage under
Insurance Law § 3420 (f) (2) is a subspecies of uninsured
motorist coverage under Insurance Law § 3420 (f) (1), and the
reach of the two statutory subsections is essentially

coterminous, except that Insurance Law § 3420 (f) (2) covers accidents involving underinsured motorists and can provide for a higher limit on the amount of recovery (see Rafellini v State Farm Mut. Auto. Ins. Co., 9 NY3d 196, 204-205 [2007]).  In light of the similarities between the two subsections of Insurance Law § 3420 (f), the term "motor vehicle" must have the same definition under those statutes and limit the benefits they provide in the same manner.  Given that police vehicles do not fall within the ambit of Insurance Law §§ 3420 (f) (1) and (f) (2), State Farm rightly declined to cover Fitzgerald, who was a passenger in a police vehicle at the time of the crash.

Fitzgerald seeks to distinguish Amato, observing that Amato involved the priority of coverage to be provided by a self-insurer, the City of New York, and an automobile insurance company, State Farm.  But, in Amato, we never suggested that we were limiting our holding to a self-insurer or to situations involving the priority or "stacking" of coverage.  In fact, we specifically noted that, under prior precedent, "self-insurers generally have the same statutory responsibility as other insurers to provide uninsured motorist coverage," and thus, our decision turned not on the City's status as a self-insurer but instead on the definition of the term "motor vehicle" under Insurance Law § 3420 (f), which we found to exclude police vehicles (Amato, 72 NY2d at 294-295).  Nor does it make sense to conclude that the term "motor vehicle" in Insurance Law § 3420

(f) means one thing when the priority of coverage must be determined and yet means something completely different when the scope of coverage is at issue.  Surely, a term in a single undivided subsection of a statute -- here subsection (f)(2)(A) -- cannot have more than one definition depending on the facts of the case to which it is applied.[3]

Fitzgerald also points out that Insurance Law § 3420 (e) applies to a policy that covers any "motor vehicle" as well as any "vehicle as defined in [VTL 388 (2)]," whereas Insurance Law § 3420 (f) applies to a policy that covers only "motor vehicles" without mentioning "vehicles" under VTL 388 (2).

---

[3]  The dissent opines that we should direct State Farm to extend coverage to Fitzgerald because, in Amato, we noted that the officers there could receive SUM coverage under their own insurance policies (see dissenting op. at 2).  But that aspect of Amato is of no help to Fitzgerald.  In Amato, we commented that the officers could not receive MVAIC benefits because they were designated "beneficiaries" of the particular "uninsured motorist indorsement contained in their respective policies with State Farm" (Amato, 72 NY2d at 293 n 1).  In other words, the officers in Amato could still receive uninsured motorist benefits because, presumably, they were named insureds under State Farm's policy, and State Farm extended uninsured motorist coverage to them regardless of the type of vehicle they occupied.  In fact, here, Officer Knauss was covered for the same reason: the SUM indorsement expressly identified him as a named insured entitled to such coverage under any circumstances.  By contrast, Fitzgerald was not a named insured under Knauss's policy, and hence he could not receive coverage on the same grounds that Knauss or the officers in Amato could.  Rather, Fitzgerald could only qualify for SUM coverage under the statutorily required SUM clause in Knauss's policy, which limited coverage to occupants of statutory "motor vehicles."  As we have explained, Fitzgerald was not occupying a "motor vehicle" at the time of his accident, and he was not entitled to SUM coverage.

Fitzgerald takes this as proof that Insurance Law § 3420 (f),

unlike Insurance Law § 3420 (e), extends coverage to cases

involving any "motor vehicle" as that term is defined in VTL 125,

including police vehicles.

But we essentially rejected that notion in Amato.

There, we noted, as Fitzgerald does now, that Insurance Law §

3420 (e)'s "exclusionary language" and citation to VTL 388 (2)

are "not repeated in the uninsured motorist provision of the

Insurance Law (Insurance Law § 3420 [f])" (Amato, 72 NY2d at

294).  Nonetheless, we determined that the Legislature intended

to carry the exclusion of police vehicles from Insurance Law §

3420 (e) over to Insurance Law § 3420 (f) because "it would be

illogical to assume that, while there is no legal obligation to

insure police vehicles for death or bodily injury in the first

instance, the City is nevertheless required to provide uninsured

motorist coverage for its police vehicles" (id.).

Even without the benefit of Amato's binding precedent,

Fitzgerald's attempt to import VTL 125's definition of "motor

vehicle" into Insurance Law § 3420 (f), but not into Insurance

Law § 3420 (e), would make no sense.  After all, Insurance Law §§

3420 (e) and 3420 (f) do not mention VTL 125 at all, and as a

result, there is no reason to suppose, as Fitzgerald does, that

the Legislature meant to incorporate VTL 125's broad definition

of "motor vehicle" into either of those insurance statutes.

Rather, the only VTL provision cited by the relevant statutes is

VTL 388 (2), which explicitly exempts police vehicles from the definition of "motor vehicle."  Accordingly, the Legislature presumably meant to exclude police vehicles from coverage under the interrelated provisions of Insurance Law §§ 3420 (e), 3420 (f) (1) and 3420 (f) (2), and the SUM endorsement here necessarily features that same exclusion.  For that reason, we have never looked to VTL 125 for guidance as to the meaning of the term "motor vehicle" under Insurance Law § 3420 (f), instead relying on the use of comparable terms in VTL 388 (2) (see Amato, 72 NY2d at 293-294) and the MVAIC Law (see Wagoner, 45 NY2d at 586-588).

While Insurance Law § 3420 (e)'s use of the phrase "of any motor vehicle or of any vehicle as defined in [VTL 388 (2)]" may be confusing insofar as the terms are inherently conflicting in their scope under the VTL, it appears that the Legislature chose those words as an imprecise expression of its intent to incorporate VTL 388 (2)'s limitations into the relevant sections of the Insurance Law.  Significantly, VTL 388 (2)'s definition of "vehicle" is narrower than that of "motor vehicle" under VTL 125 in most respects.  VTL 388 (2) incorporates nearly all of the exclusions listed in VTL 125 by defining "vehicle" as a "motor vehicle" within the meaning of VTL 125, and adding extra exclusions for a variety of agricultural equipment, fire vehicles, police vehicles and on-site construction vehicles (see VTL 388 [2]).  VTL 388 (2)'s only additional inclusions are for

trailers and for vehicles used on roads other than highways (see VTL 388 [2]).

As a result, a literal reading of Insurance Law § 3420 (e)'s reference to the negligent operation "of any motor vehicle or of any vehicle as defined in [VTL 388]" would be largely self-contradictory.  It would suggest that the statute covers "[e]very vehicle operated or driven upon a public highway which is propelled by any power other than muscular power," including police vehicles, agricultural vehicles and the like (VTL 125), or, somewhat paradoxically, a motor vehicle, excluding police vehicles, agricultural vehicles, and on-site construction equipment, but including non-highway vehicles and trailers.  Of course, had the Legislature wished for the broader definition of VTL 125 to apply to Insurance Law §§ 3420 (e) and 3420 (f), it could have easily referred to VTL 125 alone.  And if the Legislature was solely concerned about placing trailers and vehicles on non-public roads in the ambit of the insurance statute, it could have directly referred to those minor differences between the inclusions of the two VTL statutes without citing VTL 388 (2).  Since the Legislature did not refer to VTL 125 at all in drafting Insurance Law § 3420 (e), did not indicate a desire to define "motor vehicle" without limitation in that section and directly cited the narrow provisions of VTL 388, it plainly intended to narrow the definition of "motor vehicle"

for purposes of Insurance Law § 3420 (e).[4]

### Legislative History Supporting *Amato*

The legislative history of these statutes buttresses our conclusion, as previously stated in Amato, that Insurance Law § 3420 (f) does not define "motor vehicle" to include police vehicles. In that regard, even at time of the passage of the VTL, the general definition of "motor vehicle" in that statutory scheme excluded police vehicles, and the original civil liability provision of the VTL imposed such liability only for the negligent operation of "motor vehicles," excluding police vehicles (see L 1936, ch 911, § 1; L 1929, ch 54, § 2 [8]; L 1929, ch 54, § 59; Letter of State Comm'r of Highways to Governor's Counsel, Bill Jacket, L 1929, ch 54 at 8; see also Arnold W. Wise, The History of the Vehicle and Traffic Law, McKinney's Consolidated Laws, Book 62A of 1960 at xv). Hence,

---

[4] When confronted with another phrase in this statute joined by a similarly perplexing coordinating conjunction, we have previously declined to construe the phrase literally to create an expansion of coverage not otherwise clearly contemplated by the Legislature (see Matter of Allstate Ins. Co. v Libow, 65 NY2d 807, 809 [1985] [affirming "for the reasons stated in the opinion" of the Appellate Division, which refused to interpret literally a clause in Insurance Law § 3420 (f), which requires payment of "all sums, not exceeding a maximum amount or limit of ten thousand dollars exclusive of interest and costs, on account of injury to and all sums, not exceeding a maximum amount or limit of fifty thousand dollars exclusive of interest and costs, on account of death of one person, in any one accident" because the literal reading would have permitted the unintended aggregation of certain claims under that statute]; see also Matter of Allstate Ins. Co. v Libow, 106 AD2d 110, 116-118 [2d Dept 1984]).

from its inception, the VTL did not provide for civil liability arising out of the negligent operation of police vehicles. Later, when the Legislature amended the predecessor to Insurance Law § 3420, it used language that paralleled the civil liability provisions of the VTL, and it used the term "motor vehicle" to define the scope of statutorily required automobile liability insurance, thereby presumably excluding police vehicles in a similar way (see L 1939, ch 882, § 167). Accordingly, at the time the predecessors to VTL 125, VTL 388 and Insurance Law § 3420 (e) were enacted, the relevant laws had these salient features: (1) the term "motor vehicle" in general excluded police vehicles; (2) statutory civil liability did not lie for the negligent use of police vehicles; and (3) insurers were not statutorily required to cover vicarious liability with respect to vehicles that were not "motor vehicles," which term was continued in the Insurance Law at a time when the only statute defining it, VTL 2 (8), clearly excluded police vehicles (see L 1938, ch 183, § 1).

When VTL 125 was enacted, it did not contain the police vehicle exclusion in its definition of "motor vehicle," but that was of no moment because VTL 125 did not apply to the civil liability statute within the VTL (see L 1957, ch 698, § 125; L 1957, ch 698, § 100). Likewise, after the predecessor to VTL 388 was amended to define the scope of civil liability based on the operation of "vehicles" rather than "motor vehicles," a 1958 bill

ensured that it still referred to a section of the VTL that incorporated the police vehicle exclusion, thereby maintaining that limitation (see L 1958, ch 577, § 1).

The same bill made a "conformity amendment" to the predecessor to Insurance Law § 3420 (e) to "make it clear that the term 'motor vehicle' as used in that section includes all vehicles as defined in section 59 [the predecessor to VTL 388]" (Law Rev Comm'n Recommendation to the Legislature, Bill Jacket, L 1958, ch 577 at 45).  Maintaining the consistency between the predecessors to VTL 388 and Insurance Law § 3420 (e), the Legislature added a citation to VTL 388's predecessor and its terminology to define the coverage of the requisite liability insurance policy.  To the existing clause of Insurance Law § 3420 (e)'s predecessor that said, "No policy or contract of personal liability insurance . . . covering liability arising from the ownership maintenance or operation of any motor vehicle," the Legislature appended the phrase "or of any vehicle as defined in section fifty-nine of the vehicle and traffic law" (L 1958, ch 577, § 3).  As the Bar Association of the City of New York noted, this change was "a source of confusion" insofar as the terms "vehicle" and "motor vehicle" were conflicting under the VTL, but it was nonetheless "underst[oo]d" that "the intended application of Section 167 (2) [the predecessor to Insurance Law § 3420 (e)] [wa]s only to the liability arising under Vehicle and Traffic Law § 59" (Mem of Ass'n of the Bar of the City of New York, Bill

Jacket, L 1958, ch 577 at 19 [emphasis added]).  The Law Revision

Commission, which proposed the legislation, essentially confirmed

this understanding of the reach of the predecessor to Insurance

Law § 3420 (e)(see Law Rev Comm'n Recommendation to the

Legislature, Bill Jacket, L 1958, ch 577 at 38-39).  Therefore,

in enacting the 1958 amendments to VTL 388's and Insurance Law §

3420 (e)'s antecedents, the Legislature adopted legislation meant

to continue to exclude police vehicles from the ambit of the

predecessor to Insurance Law § 3420 (e) (see also Mem of

Assistant Director of Research of Law Rev Comm'n, Bill Jacket, L

1962, ch 825 at 19 ["section 167 (2) of the Insurance Law . . .

now require[s] coverage of the insured's liability under section

388 of the Vehicle and Traffic Law," which was the successor to

VTL 59 and still exempted police vehicles]).

        1958 also brought the advent of uninsured motorist

coverage.  The Legislature sought to guarantee that all owners of

covered vehicles had uninsured motorist coverage from one of two

sources: (1) automobile insurance policies including that

coverage; or (2) uninsured motorist benefits paid by the Motor

Vehicle Accident Indemnification Corporation (MVAIC) to those who

did not have such insurance (see generally L 1958, ch 759).

Accordingly, the Legislature crafted a new article 17-A of the

Insurance Law, establishing MVAIC and directing it to process all

claims for uninsured motorist benefits, regardless of whether the

claims ultimately were to be paid by an insurance company or by

MVAIC itself (see id.).  Under that article, a "motor vehicle" to which uninsured motorist benefits applied was not inclusive of police vehicles (see L 1958, ch 759, § 2; see also former VTL 2 [1958]).[5]

The Legislature also amended Insurance Law § 167 (2), the predecessor to Insurance Law § 3420 (e), to compel insurers to add uninsured motorist endorsements to automobile insurance policies.  The Legislature placed the uninsured motorist provision in a new subsection (2-a) immediately following subsection (2) of Insurance Law § 167 (see L 1958, ch 759, § 4).  Like its modern counterpart, Insurance Law § 167 (2-a) mandated that uninsured motorist coverage be contained in any "policy insuring against loss resulting from liability imposed by law for bodily injury or death . . . arising out of the ownership, maintenance and use of a motor vehicle by the insured," and that the policy had to establish that coverage either through the

---

[5]  Today, the MVAIC statute still defines "motor vehicle" as "exclud[ing] fire and police vehicles" (Insurance Law § 5202 [a]).  The Amato Court stated that "the uninsured occupant of a police vehicle may file a claim with the MVAIC for injuries sustained in an accident caused by an uninsured motor vehicle," but that "police vehicles are exempted from the provisions of the MVAIC statute to the extent that otherwise eligible claimants are barred from filing a claim for injuries caused by the negligent operation of a police vehicle" (Amato, 78 NY2d at 295 n2 [emphasis in original]).  Thus, the Court seems to have found that, although a police vehicle is not a "motor vehicle" under the MVAIC Law, it can still be involved in an actionable "motor vehicle accident" under that statutory scheme (Insurance Law § 5208 [a] [1]), as long as its operation is not the cause of the accident.

insurer itself or through MVAIC (L 1958, ch 759, § 4 [emphasis added]).  Tellingly, although the statute did not define "motor vehicle," it was placed immediately following Insurance Law § 167 (2) and its incorporation of a definition of "motor vehicle" that exempts police vehicles.  Indeed, the Legislature saw the relationship between these two statutory subsections as quite close, for Insurance Law § 167 (2-a) was meant to fill what were simply "loopholes" (Assembly Sponsor's Mem, Bill Jacket, L 1958, ch 759 at 6) or "gaps" (Governor's Open Letter to Legislature, Bill Jacket, L 1958, ch 759 at 11) in the compulsory insurance statutes and Insurance Law § 167 (2), merely adding an uninsured motorist subdivision as an appendage to the existing law.

        Along those lines, uninsured motorist endorsements under Insurance Law § 167 (2-a) were also intended to extend the same coverage as the MVAIC statute, and nothing more, because the statutory uninsured motorist endorsements and MVAIC were regarded as related "prong[s]" of the same "attack" on the problem of uninsured motorists (Mem of Superintendent of Insurance, Bill Jacket, L 198, ch 759 at 23; see also McCarthy v Motor Vehicle Acci. Indemnification Corp., 16 AD2d 35, 38-42 [4th Dept ] ["The MVAIC Law was not designed to supplement the insurance coverage of insured automobiles or to protect injured persons against risks which were not covered by the standard automobile liability policies" because "[t]hey are, and under the scheme of the statute, they must be, coextensive," and certain terms in

policies under Insurance Law § 167 (2-a) must be given the same meaning as under the MVAIC Law], aff'd, 12 NY2d 922 [1963]; Moffitt v Moffitt, 46 AD2d 944 [3d Dept 1974] [in the context of uninsured motorist accident, "MVAIC coverage is coextensive with that of a standard policy and article 17-A of the Insurance Law does not supplement the coverage of insured automobiles or protect insured persons against risks not covered by a standard policy"]).  So it was that, in Wagoner (45 NY2d at 581), we looked to the definitions section of the MVAIC Law as authority for the proposition that "motor cycle" was a "motor vehicle" under Insurance Law § 167 (2-a), which was section 3420 (f)'s predecessor, because it was defined as such for purposes of the MVAIC Law (see id. at 586-588).  This suggests that, just as MVAIC did not generally define a "motor vehicle" as inclusive of police vehicles, the uninsured motorist statute likewise removed police vehicles from the ambit of that term.  And, the state of affairs remained the same following the passage of the legislation that rearranged and renumbered portions of the VTL into its modern configuration (see L 1959, ch 775, §§ 125, 125-a, 388 [2]; L 1960, ch 608, § 4; L 1967, ch 139, § 1).

SUM coverage became compulsory in 1977 via an amendment to Insurance Law § 167 (2-a).  This combined uninsured motorist/SUM coverage statute retained the original language of the uninsured motorist provision and added within that same undivided subsection the following:

> "Any such policy shall, at the option of the
> insured, also provide supplementary uninsured
> motorists insurance for bodily injury, in an
> amount up to the bodily injury liability
> insurance limits of coverage provided under
> such policy, subject to a maximum [of
> $100,000 due to bodily injury or death per
> accident]." (L 1977, ch 892, § 3).

As we have recognized, these statutory SUM benefits were "designed to give insureds the same level of protection that would have been available to others under the policy if the insureds were the tortfeasors who caused personal injuries," and the Legislature first addressed SUM coverage and general uninsured motorist coverage in the same statutory section because "both paragraphs of section 167 (2-a) related to uninsured motorist benefits and supplementary coverage was framed as an extension of the mandatory coverage outlined in the first paragraph" (Rafellini, 9 NY3d at 204-205). Therefore, SUM coverage was an extension of uninsured motorist coverage that generally applied in the same situations, just with different policy limits.

Finally, in 1984, the Insurance Law was renumbered in its entirety, resulting in the transfer of the old SUM, uninsured motorist and general liability coverage provisions into new Insurance Law § 3420. As a result, the requirements of general liability insurance policies are now outlined in Insurance Law § 3420 (e), uninsured motorist coverage requirements can be found in Insurance Law § (f) (1), and SUM coverage provisions are in Insurance Law § (f) (2) (A) (see L 1984, ch 367). Despite the

separation of the uninsured motorist and SUM measures into distinct subsections (f) (1) and (f) (2), "[t]his recodification was not meant to effect a substantive change in the law -- certainly, there is no reason to conclude that the Legislature split the two paragraphs into separate subsections to create a distinction between the two types of coverages that did not already exist" (Rafellini, 9 NY3d at 205; see Letter of Superintendent of Insurance to Governor's Counsel, Bill Jacket, L 1984, ch 367 at 7).

When Amato arrived in this Court, the law stood as follows: New York had traditionally exempted police vehicles from statutes dealing with civil liability under the VTL; the Legislature had long bound the VTL civil liability statute and the predecessors to Insurance Law § 3420 (e) together, making their coverage coextensive; the Legislature had also created essentially coterminous MVAIC and uninsured motorist statutes, the former of which defined "motor vehicle" to exclude police vehicles; the Legislature had expressed a desire to maintain consistency in the scope of coverage of general automobile liability insurance and uninsured motorist coverage; and statutory uninsured motorist coverage and SUM coverage gave rise to matching benefits and limitations, such that if one excluded police vehicles, the other logically did so as well.

Against this backdrop, the Amato Court had every reason to conclude that, because the liability insurance provision of

Insurance Law § 3420 (e) had traditionally dovetailed with the coverage of VTL 388 and its predecessors, Insurance Law § 3420 (e) employed the phrase "of a motor vehicle or of a vehicle as defined in [VTL 388]" as an imprecise way of incorporating the limitations of VTL 388 into Insurance Law § 3420 (e). In other words, Insurance Law § 3420 (e) used VTL 388 (2) to redefine "motor vehicle" as exempting police vehicles from the automobile insurance sections of Insurance Law § 3420. Given that the uninsured motorist and SUM coverage sections of Insurance Law § 3420 had originated as outgrowths designed to simply fill the uninsured or underinsured motorist "gaps" in the compulsory insurance statute and Insurance Law § 3420 (e), rather than to expand the class of covered vehicles, the Court rightly decided that Insurance Law §§ (f) (1) and (f) (2) logically applied to the limited category of "motor vehicles" referenced in Insurance Law § 3420 (e), thus also excluding police vehicles. Since SUM coverage under Insurance Law § 3420 (f) (2) was just a variant of uninsured coverage under subsection (f) (1) of the same statute, the Court appropriately found that SUM coverage was likewise limited to non-police vehicles. Accordingly, the Amato Court properly interpreted Insurance Law § 3420 (f) (2) in a manner fully consistent with the Legislature's intent.

<u>Stare Decisis and Developments Post-*Amato*</u>

Even if we were to disagree with our holding in Amato, we would nonetheless be bound to follow it under the doctrine of

stare decisis.  "'Stare decisis is the doctrine which holds that common-law decisions should stand as precedents for guidance in cases arising in the future' and that a rule of law 'once decided by a court, will generally be followed in subsequent cases presenting the same legal problem'" (People v Peque, 22 NY3d 168, 194 [2013], quoting People v Damiano, 87 NY2d 477, 488 [1996] [Simons, J., concurring]).  Even under the most flexible version of the doctrine applicable to constitutional jurisprudence, prior decisions should not be overruled unless a "compelling justification" exists for such a drastic step (People v Lopez, 16 NY3d 375, 384 n5 [2011]; see People v Silva, 24 NY3d 294, 300 [2014]).  As we recently reiterated, an even more extraordinary and compelling justification is needed to overturn precedents involving statutory interpretation, such as Amato, because unlike in constitutional cases, "if the precedent or precedents have misinterpreted the legislative intention [embodied in a statute], the Legislature's competency to correct the misinterpretation is readily at hand" (Palladino v CNY Centro, Inc., 23 NY3d 140, 151 [2014] [internal quotation marks and citations omitted]).  Indeed, in Palladino, we upheld a statutory interpretation precedent that we found to be riddled with shortcomings both at the time it had been decided and thereafter.  While we openly "question[ed]" the "utility or wisdom" of that precedent, we nonetheless followed it (id. at 150; see also id. at 147-150).

Here, Fitzgerald does not so much as ask us to overturn

<u>Amato</u>, much less advance any compelling justification for disturbing that precedent.  Nor do we find it appropriate to discard <u>Amato</u> on our own initiative, as there is no evidence that it has become unworkable, is unjust or has created an irreconcilable conflict in our case law.  Certainly, legislative developments since our decision in <u>Amato</u> have not cast doubt on its validity, for the Legislature has repeatedly amended Insurance Law § 3420 after <u>Amato</u> without making any effort to undo that decision (<u>see</u> L 2013, ch 11, § 1; L 2012, ch 496, § 1; L 2008, ch 388, §§ 2-6; L 2002, ch 584, §§ 1-2; L 1997, ch 568, § 1; L 1997, ch 547, § 2; L 1995, ch 305, § 1; L 1994, ch 425, § 2; <u>see</u> <u>generally</u> Bill Jacket, L 2013, ch 11; Bill Jacket, L 2012, ch 496; Bill Jacket L 2008, ch 388; Bill Jacket, L 2002, ch 584; Bill Jacket, L 1997, ch 547; Bill Jacket, L 1995, ch 305).  This is true even with respect to the specific amendments altering the limits of SUM coverage, and even at times when the Legislature made efforts to overturn other pertinent judicial decisions with which it disagreed (<u>see</u> L 2012, ch 496, § 1; L 1997, ch 568, § 1; L 1997, ch 547, § 2; <u>see</u> <u>e.g.</u> Senate Sponsor's Mem, Bill Jacket, L 1997, ch 547 at 7 [seeking to expedite disclosure of coverage of SUM policies in response to Appellate Division case law strictly construing timing requirements for filing of SUM claims, and also citing this Court's decision in <u>Maurizzio v Lumbermen's Mutual Insurance Co.</u> (73 NY2d 951 [1989])]; Mem of Law Rev Comm'n, Bill Jacket, L 2002, ch 584 at 9 [calling Legislature's

attention to need for amendment to overrule <u>Black v Allstate Ins.
Co</u> (274 AD2d 346 [1st Dept 2000])]).

Therefore, stare decisis compels retention of <u>Amato</u>.
Because there is no basis for distinguishing that case from the
one before us, Fitzgerald's status as a passenger of a police
vehicle at the time of the accident dooms his claim under <u>Amato</u>
and Insurance Law § 3420 (f) (2) (A).

III

An unbroken line of historical practice, legislative
history, statutory text and precedent establishes that a SUM
endorsement prescribed by Insurance Law § 3420 (f) (2) (A)
exempts police vehicles from its definition of the term "motor
vehicle" absent a specific provision to the contrary in a given
SUM endorsement.  Since there is no contrary provision in the SUM
endorsement here, it does not cover liability for injuries
arising from the use of a police vehicle of the sort occupied by
Fitzgerald during his accident.  While Fitzgerald may pursue the
available remedies, if any, under the No-Fault Law, a lawsuit or
any insurance policy he has purchased for himself, he cannot
recover under the SUM endorsement of Knauss's policy, and the
Appellate Division erred in overturning the stay of arbitration
under that policy.  Accordingly, the order of the Appellate
Division should be reversed, with costs, and the petition for a
permanent stay of arbitration granted.

Matter of State Farm v Fitzgerald

No. 119

PIGOTT, J.(dissenting):

The issue in this case is simple: whether plaintiff
can recover from State Farm, the carrier that issued a SUM
endorsement to Knauss's personal motor vehicle insurance policy.
Plaintiff, a person injured while occupying a motor vehicle
driven by Knauss, is entitled to recover under the SUM
endorsement.

In Matter of State Farm Mut. Auto Ins. Co. Amato, this
Court was asked to decide whether the City of New York, as an
unregulated self-insurer, was statutorily required to provide
uninsured motorist coverage to two of its police officers who
were injured when their police vehicles were struck by uninsured
motor vehicles (Amato, 72 NY2d at 294). The officers each filed
uninsured motorist claims with State Farm, their insurance
carrier, to recover for their personal injuries (see id.). When
State Farm denied their claims, both officers sought to arbitrate
their uninsured motorist claims, and, in both cases, State Farm
petitioned to stay the arbitration (see id.). State Farm argued
that it was not obligated to provide uninsured motorist coverage
because the City of New York, "as owner of the host vehicle, had
the primary obligation to provide uninsured motorist coverage"

- 1 -

(id. at 292 [internal quotation marks omitted]).  This Court rejected that contention, holding that, as an unregulated self-insurer, the City was not statutorily required to provide uninsured motorist coverage to its officers (id. at 290).  The Amato Court  recognized nonetheless that the officers may make a claim against their own uninsured motorist policy (id. at fn. 1 [emphasis supplied]; see also Williams v City of New York, 144 AD2d 553 [2d Dept 1988] [finding that while the City had no obligation to provide uninsured motorist benefits to the police officer plaintiff, she was entitled to summary judgment against the insurer of her personal vehicle]).

Here, plaintiff is not seeking uninsured motorist coverage from the City, as it is settled under Amato that the City has no obligation to provide the plaintiff with uninsured motorist benefits.  It therefore follows, as in our prior precedent, that plaintiff is entitled to coverage under the Knauss' SUM endorsement.

The Legislature intended to make compensation available in cases in which insured persons suffer automobile accident injuries at the hands of financially irresponsible motorists.  As this Court recognized in Amato,

> "[The] Legislature has specifically declared
> its grave concern that motorists who use the
> public highways be financially responsible to
> ensure that innocent victims of motor vehicle
> accidents be recompensed for their injuries
> and losses" (Amato, 72 NY2d 288, 292 citing
> Matter of Allstate Ins. Co. v Shaw, 52 NY2d
> 818, 819).

Under the majority's holding, plaintiff is left without uninsured motorist coverage altogether.  Clearly, neither the Legislature nor this Court would ever intend such a result.

       For these reasons, I dissent and would affirm the order of the Appellate Division.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order reversed, with costs, and petition for a permanent stay of arbitration granted.  Opinion by Judge Abdus-Salaam.  Judges Read, Stein and Gonzalez concur.  Judge Pigott dissents and votes to affirm in an opinion in which Chief Judge Lippman and Judge Fahey concur.  Judge Rivera took no part.

Decided July 1, 2015