█ In the Matter of the Arbitration between U.S. Speciality Insurance Co., Respondent, and Frank J. Denardo, Appellant. [57 NYS3d 743]—

Egan Jr., J. Appeal from an order of the Supreme Court (Mott, J.), entered July 12, 2016 in Ulster County, which, among other things, granted petitioner's application pursuant to CPLR 7503 to permanently stay arbitration between the parties.

On September 26, 2013, respondent, a detective with the Town of Poughkeepsie Police Department, allegedly sustained certain injuries when his unmarked police cruiser collided with another vehicle at an intersection. At the time of the accident, both respondent and the operator of the other vehicle were insured under policies issued by the Government Employees Insurance Company (hereinafter GEICO), and the Town of Poughkeepsie was covered under an insurance policy issued by petitioner. On January 14, 2014, respondent submitted a notice of intention to make a claim for supplementary uninsured/underinsured motorist (hereinafter SUM) benefits under the Town's policy.[1] Petitioner acknowledged receipt of respondent's "potential SUM claim," requested certain additional information and advised that any settlement of respondent's claim against the driver of the other vehicle would require petitioner's consent. Respondent subsequently settled that claim (with petitioner's consent), provided petitioner with requested medical authorizations and documents and was deposed.

By letter dated January 11, 2016, petitioner apprised respondent's counsel that, consistent with the Court of Appeals' decision in *Matter of State Farm Mut. Auto. Ins. Co. v Fitzgerald* (25 NY3d 799 [2015]), the police vehicle that respondent was operating at the time of the accident was not a "motor vehicle" for purposes of SUM coverage and, therefore, respondent was not an insured under the terms of the SUM endorsement. Accordingly, petitioner advised, should respondent demand arbitration with respect to his SUM claim, petitioner would seek to permanently stay such arbitration upon those grounds. Respondent then served petitioner with a demand for arbitration and, as promised, petitioner moved by order to show cause for a permanent stay of arbitration and a declaration that the policy did not provide coverage for respondent's SUM claim. Respondent opposed that application and, among other things, moved for summary judgment—seeking a declaration that petitioner indeed was obligated to provide SUM coverage for the subject accident. Supreme Court granted petitioner's ap-

---

1. Respondent also filed a claim for SUM benefits with his carrier, but GEICO denied this claim in March 2014 because the vehicle that respondent was operating at the time of the accident was—according to GEICO's records—his work vehicle and, hence, was not listed on respondent's policy.

plication and denied respondent's requested relief, prompting this appeal.

The crux of respondent's argument upon appeal is that, notwithstanding the Court of Appeals' decisions in *Fitzgerald* and *Matter of State Farm Mut. Auto. Ins. Co. v Amato* (72 NY2d 288, 294-295 [1988]), the policy issued to the Town by petitioner indeed provided SUM coverage under the circumstances presented here, and, in any event, petitioner is estopped from disclaiming coverage due to its two-year delay in doing so. We disagree with both of these propositions and, therefore, affirm.

The SUM endorsement to the Town's insurance policy defines the term "insured," in relevant part, as "[a]ny other person while occupying . . . [a] motor vehicle insured for SUM under this policy." The policy does not define the term "motor vehicle," but the Court of Appeals has made clear that, in the absence of a contract provision to the contrary, the definition of "motor vehicle" set forth in Vehicle and Traffic Law § 388 (2) controls for purposes of both uninsured motorist coverage (*see Matter of State Farm Mut. Auto. Ins. Co. v Amato*, 72 NY2d at 294-295) and SUM coverage (*see Matter of State Farm Mut. Auto. Ins. Co. v Fitzgerald*, 25 NY3d at 808-809). Inasmuch as "fire and police vehicles" are expressly excluded from the definition of a motor vehicle under Vehicle and Traffic Law § 388 (2),[2] it necessarily follows that, consistent with the cited cases, the police vehicle operated by respondent at the time of the accident did not fall within the scope of the SUM coverage provided under the Town's policy with petitioner. As the subject vehicle was not "[a] motor vehicle insured for SUM under [the] policy," respondent, in turn, was not a covered insured under such policy. Thus, petitioner did not in fact contract to provide SUM coverage to either the Town or respondent under the circumstances presented here.

In an effort to circumvent the language employed in the subject SUM endorsement, the effect of Vehicle and Traffic Law § 388 (2) and the Court's holding in *Fitzgerald*, respondent—citing the declarations page for the business auto coverage portion of the Town's policy and the designations contained thereon—argues that his unmarked police vehicle nonetheless qualified as a "covered auto" for purposes of SUM coverage. In support of this argument, respondent notes that the policy defines "[a]uto" as "[a] land motor vehicle, 'trailer' or semitrailer designed for travel on public roads . . . or . . . [a]ny other

---

**2.** The fact that respondent was operating an unmarked police vehicle at the time of the accident is of no moment (*see generally Jones v Albany County Sheriff's Dept.*, 123 AD3d 1331, 1333 [2014]).

land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged." As reflected on the declarations page, a covered auto included those autos owned by the Town. Thus, according to respondent, even if his unmarked police vehicle is not a "motor vehicle" under Vehicle and Traffic Law § 388 (2), it nevertheless meets the definition of a "land vehicle that is subject to a compulsory or financial responsibility law" and, hence, qualifies for SUM coverage under the terms of the policy.

The flaw in respondent's argument on this point is that, in defining an "insured" for purposes of SUM coverage, the SUM endorsement to the policy specifically utilizes the term "motor vehicle" instead of "auto" or "covered auto," and respondent cannot rewrite the subject policy/SUM endorsement and create coverage that does not otherwise exist simply by substituting terms and definitions that are more advantageous to him. To the extent that respondent argues that the use of these various terms—auto, covered auto and motor vehicle—create an ambiguity in the policy that must be construed against petitioner, again, we disagree. "Although provisions of an insurance policy drafted by the insurer are generally construed against the insurer if ambiguous, a policy provision mandated by statute must be interpreted in a neutral manner consistently with the intent of the legislative and administrative sources of the legislation" (*Matter of State Farm Mut. Auto. Ins. Co. v Fitzgerald*, 25 NY3d at 804 [citations omitted]). As petitioner "was required to offer SUM coverage in compliance with the terms of Insurance Law § 3420 (f) (2) (A) and Department of Insurance regulations," the language employed in the SUM endorsement "must be interpreted in a neutral manner" (*id.* at 804). In short, we agree with Supreme Court that, under the circumstances presented here, the policy issued by petitioner did not afford respondent SUM coverage to respondent in the first instance.

Respondent next contends that, because petitioner failed to disclaim SUM coverage until two years after he filed his notice of intention to make a claim, petitioner now is estopped from doing so. To be sure, where coverage exists under a particular insurance policy in the first instance and the carrier unreasonably delays in denying coverage or disclaiming liability based upon a policy exclusion or defense, estoppel may apply to prevent the carrier from doing so—provided the insured can demonstrate that he or she relied upon the carrier's actions to his or her detriment and was prejudiced by the carrier's delay

in denying or disclaiming coverage (*see Merchants Mut. Ins. Group v Travelers Ins. Co.*, 24 AD3d 1179, 1182 [2005]; *Mattimore v Patroon Fuels*, 103 AD2d 981, 982 [1984]). That said, where, as here, "the denial of the claim is based upon lack of coverage, estoppel may not be used to create coverage regardless of whether or not the insurance company was timely in issuing its disclaimer" (*Matter of Liberty Mut. Ins. Co. v McDonald*, 6 AD3d 614, 615 [2004]; *see Matter of Worcester Ins. Co. v Bettenhauser*, 95 NY2d 185, 188-189 [2000]; *Zappone v Home Ins. Co.*, 55 NY2d 131, 135-137 [1982]; *Nafash v Allstate Ins. Co.*, 137 AD3d 1088, 1089 [2016]). Succinctly stated, "the failure to disclaim coverage does not create coverage which the policy was not written to provide" (*Zappone v Home Ins. Co.*, 55 NY2d at 134), and "a disclaimer is unnecessary when a claim does not fall within the coverage terms of [the] insurance policy" (*Nafash v Allstate Ins. Co.*, 137 AD3d at 1089 [internal quotation marks, brackets and citation omitted]; *see Matter of Worcester Ins. Co. v Bettenhauser*, 95 NY2d at 188).[3] Applying the cited cases to the matter before us, it is clear that equitable estoppel is of no aid to respondent, who was not an insured under the policy issued by petitioner to the Town (*compare General Acc. Ins. Co. of Am. v Metropolitan Steel Indus., Inc.*, 9 AD3d 254, 254 [2004]). Simply put, inasmuch as respondent was not an insured under the policy issued by petitioner and petitioner did not in fact provide SUM coverage to respondent under the terms of the subject policy, petitioner was under no concomitant obligation to disclaim (*compare Matter of Worcester Ins. Co. v Bettenhauser*, 95 NY2d at 190). In light of this conclusion, we need not reach the issue of whether respondent suffered any prejudice as the result of petitioner's actions—as detrimental reliance and prejudice are implicated only where equitable estoppel may be invoked in the first

---

**3.** To our analysis, this rule—that estoppel may not be invoked to create coverage that does not otherwise exist—applies with equal force regardless of whether the asserted failure to timely disclaim is premised upon statutory (*see* Insurance Law § 3420 [d] [2]) or common-law principles (*see Matter of Worcester Ins. Co. v Bettenhauser*, 95 NY2d at 188-189; *Zappone v Home Ins. Co.*, 55 NY2d at 134-136; *Nafash v Allstate Ins. Co.*, 137 AD3d at 1089). Hence, although Insurance Law § 3420 (d) (2) indeed "establishes an absolute rule that unduly delayed disclaimer of liability or denial of coverage violates the rights of the insured or the injured party" and, unlike common-law equitable estoppel, obviates the need for the insured or the injured party to demonstrate prejudice (*KeySpan Gas E. Corp. v Munich Reins. Am., Inc.*, 23 NY3d 583, 590 [2014] [internal quotation marks, brackets and citation omitted]), the expeditious statutory disclaimer is not triggered where, as here, there is no coverage in the first instance.

instance.[4] Respondent's remaining arguments, including his promissory estoppel claim and his assertion that petitioner engaged in conduct that would preclude it from seeking to permanently stay arbitration, have been examined and found to be lacking in merit.

Peters, P.J., McCarthy, Mulvey and Aarons, JJ., concur. Ordered that the order is affirmed, with costs.

4. Respondent's waiver claim is equally unavailing. "[W]here there is no coverage under the policy, the doctrines of waiver and estoppel may not operate to create such coverage, and where the issue is the existence or nonexistence of coverage, the doctrine of waiver is simply inapplicable" (*Ward v County of Allegany*, 34 AD3d 1288, 1290 [2006] [internal quotation marks, brackets, ellipsis and citations omitted]).